# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DISTRICT

| | |
|---|---|
| ABDALLAH ELSHEIKH, TARIQ MALIK, MAHDIUR RAHMAN, TAHIR MAHMOOD and JOE LOTT, | |
| Plaintiffs, | 10 C 2952 |
| v. | Judge Ronald A. Guzmán |
| FALCON HOLDINGS, LLC and ASLAM KHAN, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have sued defendants for fraud and breach of contract. Defendants have filed a motion pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment. For the following reasons, the Court grants the motion.

## Facts

In 1999, defendant Khan and Sentinel Capital Partners II L.P. created defendant Falcon Holdings, LLC to purchase and operate 100 Church's Fried Chicken Franchises. (Pls.' Resp. Defs.' LR 56.1(a) Stmt. ¶¶ 11-13.) Khan, who was Falcon's CEO, owned almost forty percent of Falcon's common units, Sentinel owned almost sixty percent and Omega Partners, L.P. owned the remainder. (*Id*. ¶¶ 14-15, 17.) Sentinel and Omega also owned all of Falcon's preferred units. (*Id.* ¶¶ 16-17.)

Plaintiff Mahmood started to work for Falcon in October 1999 as a market leader. (*Id.* ¶ 20; Harrod Decl., Ex. 6, Mahmood Dep. at 12.) He resigned in January 2005 and returned to Falcon in September 2005 as a Zone Director of Operations. (Harrod Decl., Ex. 6, Mahmood Dep. at 36.)

Plaintiff Malik started to work for Falcon in December 1999, was terminated in October 2001, and was re-hired by Falcon in March 2005 as a zone director of operations. (Pls.' Resp. Defs.' LR 56.1(a) Stmt. ¶ 21.) Plaintiff Lott started working for Falcon in 1999 as a market leader. (*Id.* ¶ 23.) Plaintiff ElSheikh started to work for Falcon in January 2000 as the IT director. (*Id.* ¶ 19.) Plaintiff Rahman started working for Falcon in September 2000 as a manager-in-training. (*Id.* ¶ 22.)

Plaintiffs say they left other jobs to join Falcon because Khan told them that he planned to buy Sentinel and Omega's share of the company, and when he did, would give them and other high-ranking Falcon employees half ownership of the company. (Pls.' LR 56.1 Stmt. Add'l Facts ¶¶ 4-10.) Khan denies making any such promise. (Defs.' Resp. Pls.' LR 56.1 Stmt. Add'l Facts ¶ 4.)

At the end of 2000, ElSheikh and Mahmood each bought 2.92 common units of Falcon from Sentinel pursuant to an executive incentive program. (Defs.' LR 56.1(a) Stmt. ¶¶ 24-25, 29-30; Pls.' Resp. Defs.' LR 56.1(a) Stmt. ¶¶ 24-25, 29-30; *see* Harrod Decl., Ex. 4, ElSheikh Dep. at 28-29.) In January 2007, Falcon bought the units from ElSheikh and Mahmood, paying each $90,000.00. (Harrod Decl., Exs. 11 & 14, Membership Redemption Agreements.) At the time of the sale, ElSheikh and Mahmood each signed a redemption agreement and release. (*See id.* Exs. 11 & 14, Membership Redemption Agreements; *id.*, Exs. 13 & 15 Mutual Releases.) In relevant part, the releases state:

> Executive . . . hereby releases, acquits and forever discharges the Company and its directors [and] officers . . . of and from any and all manner of action, rights and causes of action, suits, proceedings . . . and claims of whatsoever kind or description whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect, which he ever had, now has, or hereafter can, shall or may have . . . except any claims arising out of the Redemption Agreement . . . , and any claims arising out of any action or event occurring after the date hereof.

(*Id.*, Exs. 13 & 15, Mutual Releases ¶ 2.) However, viewed favorably to them, the record shows that Mahmood and ElSheikh were given only the signature pages of the release, were told they had to

2

sign them to receive payment for their units and did not know that they were signing a general release of claims. (Index Exs. Pls.' Resp. Defs.' Mot. Summ. J., Ex. 2, Mahmood Dep. at 138-144; *id.*, Ex. 3, ElSheikh Dep. at 72-73.)

In May 2005, Khan bought Sentinel and Omega's entire interest in Falcon for "the implied purchase price" of $47,852,490.00. (*Id.*, Ex. 11, Mem. from Coady to File of 5/31/05.) At the time, the high-ranking employee group consisted of twenty people. (Pls.' LR 56.1 Stmt. Add'l Facts ¶ 26.) Khan did not give plaintiffs, or apparently any of the other high-ranking employees, the promised ownership interest in Falcon. (Pls.' Resp. Defs.' LR 56.1(a) Stmt. ¶ 43.)

**Discussion**

To prevail on a summary judgment motion, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Defendants contend that the releases entitle them to judgment on ElSheikh and Mahmood's claims. ElSheikh and Mahmood argue that the releases are void for lack of consideration. "A release must be based upon consideration which consists either of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss of responsibility given, suffered or undertaken by another." *Hurd v. Wildman, Harrold, Allen & Dixon*, 707 N.E.2d 609, 615 (Ill.

3

App. Ct. 1999) (quotation omitted). A promise to perform a pre-existing duty is not, however, adequate consideration for a contract. *Id.* at 615-16. Plaintiffs say such a promise – to pay them each $90,000.00 as the redemption agreement required – was the only consideration Falcon gave them for the releases.

The Court disagrees. The releases recite as consideration both the promises contained in the redemption agreement and "the mutual covenants, promises and agreements of the parties contained herein." (*See* Harrod Decl. of 1/31/11, Exs. 13 & 15 Mutual Releases 1.) The "promises . . . herein" are that, with narrow exceptions, neither party will sue the other for any existing claims. (*See id.* ¶¶ 1-2 (stating that Falcon "hereby releases, acquits and forever discharges [ElSheikh and Mahmood, respectively]" and ElSheikh and Mahmood, respectively, "hereby releases, acquits and forever discharges" Falcon "of and from any and all manner of action, rights and causes of action, suits, proceedings . . . of whatsoever kind or description . . . which [it/he] ever had, now has, or hereafter can, shall or may have . . . except any claims arising out of the Redemption Agreement . . . , and any claims arising out of any action or event occurring after the date hereof").) There is no evidence to suggest that Falcon's promise not to sue was illusory or that it failed to perform the concomitant obligations of the redemption agreement. *Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*, 499 N.E.2d 1319, 1323 (Ill. 1986) (stating that a promise is illusory only if it is conditioned on an event that cannot occur). Thus, plaintiffs have not raised a genuine issue of material fact as to whether the releases were void for lack of consideration. *Garvery v. McMahon & Elliot*, 670 N.E.2d 822, 827 (Ill. App. Ct. 1996) (holding that a law firm's release of "any claims it may have or believe it has against [its former client]" was sufficient consideration for former client's release of claims against law firm).

Alternatively, ElSheikh and Mahmood argue that the releases are invalid because they were fraudulently induced by defendants. Even if that is true, an issue the Court does not decide, the releases would not be void but voidable, giving plaintiffs the option of rescinding them or ratifying them in spite of the fraud. *Tower Investors, LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 939 (Ill. App. Ct. 2007); *Ill. State Bar Ass'n Mut. Ins. Co. v. Coregis, Ins. Co.*, 821 N.E.2d 706, 713 (Ill. App. Ct. 2004). The evidence establishes that ElSheikh and Mahmood chose the latter. (Pls.' Resp. Defs.' LR 56.1(a) Stmt. ¶¶ 29-30, 35, 38, 41 (admitting that ElSheikh and Mahmood were "awarded . . . common units in Falcon" as part of the incentive program and that Falcon paid them each $90,000.00 for their units)); *see 23-25 Bldg. P'ship v. Testa Produce, Inc.*, 886 N.E.2d 1156, 1163 (Ill. App. Ct. 2008) ("A party seeking rescission must restore the other party to the status quo before the contract took place . . . . [and] return any consideration it received from the other party under the contract."). Because the evidence does not suggest that plaintiffs made any attempt to rescind the redemption deal, the releases would be enforceable, even if they had been fraudulently induced.

In sum, the record establishes that ElSheikh and Mahmood released any claims they had against defendants based on any promise Khan allegedly made before January 1, 2007. Because the record, viewed favorably to plaintiffs, shows that ElSheikh and Mahmood's claims are based solely on alleged promises Kahn made to them before that date (Pls.' LR 56.1 Stmt. Add'l Facts ¶ 12), defendants are entitled to judgment as a matter of law on the claims they assert against him.

Defendants argue that they are also entitled to summary judgment on the other plaintiffs' claims because they have no evidence to support the damage element of their claims. *See Tower Investors*, 864 N.E.2d at 939 (stating that detrimental reliance is an element of a fraudulent

5

inducement claim); *Barille v. Sears Roebuck & Co.*, 682 N.E.2d 118, 121 (Ill. App. Ct. 1997) (stating that damage resulting from breach is an element of a contract claim). The Court agrees.

The only damages plaintiffs claim to have suffered is the "loss of equity share promised . . . by Mr. Khan," which they say is $1,196,312.25 each, *i.e.*, half of $47,852,490.00, which is what Khan paid for Sentinel and Omega's share of Falcon, divided among twenty high-ranking employees. (Harrod Decl. of 1/31/11, Ex. 8, Pls.' Answers Interrog. No. 21; Pls.' LR 56.1(a) Stmt. Add'l Facts 28; Defs.' Resp. Pls.' LR 56.1(a) Stmt. Add'l Facts ¶ 26; Index Exs. Pls.' Resp. Defs.' Mot. Summ. J., Ex. 11, Mem. from Coady to File of 5/31/05.) The record does not, however, support the inference that Falcon's value was equal to the price Khan paid because: (1) Khan bought Sentinel and Omega's interest in Falcon, *i.e.*, all of the preferred units and sixty percent of the common units, not the entire company; and (2) what he paid for their share was based on the amount of financing he could get, not necessarily its fair market value. (Index Exs. Pls.' Resp. Defs.' Mot. Summ. J., Ex. 11, Mem. from Coady to File of 5/31/05; *id.*, Ex. 1, McCormack Dep. at 19-20); *see Fishman v. Estate of Wirtz*, 807 F.2d 520, 554 (7th Cir. 1986) (stating that "fair market value would be equal to what a willing buyer would pay for the entire package, assets and liabilities"). Because plaintiffs have no evidence that suggests how much damage they suffered, and the time for developing such

evidence has passed, they have not raised a triable fact issue as to the damage element their claims.

## Conclusion

For the reasons stated above, the Court finds that there is no genuine issue of material fact on the claims plaintiffs assert against defendants, who are entitled to judgment as a matter of law on them.  Accordingly, the Court grants defendants' motion for summary judgment [doc. 43] and terminates this case.

**SO ORDERED.**                                              **ENTERED:**

**July 15, 2011**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**